Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4623 | DATE | SEPT. 21, 2000 |
| CASE TITLE | MICHAEL CANNON v. C/O BURKYBILE, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ **Status hearing set for October 19, 2000 at 11:00 a.m.**
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion [39-1] is granted. Defendants' motion [28-1] is granted in part and denied in part. All claims are dismissed except the First Amendment retaliation claims against defendants Burkybile and Benematti and the equal protection race claim against Burkybile. Defendants Keith Cooper, Lamark Carter, Leora Harry, Odie Washington, Donald Snyder, Debra Wilson, and Samantha Franklin are dismissed from this action. Defendants Burkybile and Benematti shall answer the complaint by October 10, 2000.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 3 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | SEP 2 5 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 41 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 SEP 22 PM 5: 14 | 9/21/2000 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | MQM mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL CANNON,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )   No. 99 C 4623
                                         )
C/O BURKYBILE, SGT. BENEMATTI,           )
KEITH COOPER, LAMARK CARTER,             )   **DOCKETED**
LEORA HARRY, ODIE WASHINGTON,            )
DONALD SNYDER, JR., DEBRA                )   SEP 2 5 2000
WILSON, SAMANTHA FRANKLIN,               )
                                         )
            Defendants.                  )

## MEMORANDUM OPINION AND ORDER

On July 12, 1999, Michael Cannon, currently incarcerated at Pontiac Correctional Center, brought this pro se action pursuant to 42 U.S.C. § 1983.[1] Cannon's 172-paragraph complaint

---

[1] Defendants' pleadings refer to the filing date of the complaint as October 28, 1999. The court did not order summons to issue until October 28, 1999. It had previously directed Cannon to pay the $150 filing fee in an order entered on September 15, 1999 and received payment from plaintiff on October 13, 1999. Plaintiff's envelope containing his complaint was postmarked July 8, 1999. Plaintiff has filed a motion for leave to supplement his memorandum of law with exhibits. The attached exhibits include a notarized certificate of service indicating that plaintiff delivered his complaint and copies to prison officials for mailing on June 30, 1999. Therefore, for statute of limitations purposes, the filing date is June 30, 1999. See Houston v. Lack, 487 U.S. 266 (1988).

alleges that defendants violated his constitutional rights under the First and Fourteenth Amendments and also violated 20 Illinois Administrative Code 504.810(e). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants filed their motion to dismiss on January 27, 2000. On April 6, 2000, plaintiff filed his response along with a memorandum of law. Defendants filed their reply on April 21, 2000. Plaintiff then filed a response to defendants' reply on May 2, 2000 and a motion for leave to supplement memorandum of law on July 27, 2000.

Michael Cannon brings this § 1983 action against the following employees of the Illinois Department of Corrections ("IDOC") and the Joliet Correctional Center ("JCC"): Correctional Officer ("c/o") Burkybile; Sergeant Benematti;[2] Warden Keith Cooper; Warden Lamark Carter; former IDOC director Odie Washington; IDOC Director Donald Snyder Jr.; Administrative Review Chairperson Leora Harry; Grievance Officer Debra Wilson; and Grievance Officer Samantha Franklin. Cannon's claims center primarily around an acrimonious relationship that developed between himself and Burkybile and Benematti while Cannon was

---

[2] On October 29, 1999, the Marshal returned service unexecuted on Benematti. Apparently, the IDOC refused to accept service of the complaint because Benematti was on medical leave. Plaintiff has properly identified the defendant and may rely on the Marshal to make all reasonable efforts to serve Benematti. See Graham v. Satkowski, 51 F.3d 710, 713 (7th Cir. 1995); Sellers v. United States, 902 F.2d 598, 600 (7th Cir. 1990). On September 8, 2000, an order was issued which attempts to rectify the service problem.

incarcerated at Joliet Correctional Center.

Cannon's troubles with Burkybile began in late June 1997 when Cannon was placed on the law library list. Because of various court deadlines, Cannon was scheduled to attend the law library on June 24, 1997, June 28 1997, and July 3, 1997. Library supervisor Ciancanelli and law clerk Tobias explained to Burkybile that Cannon had court deadlines and therefore had been given an extension to use the law library. On July 3, Burkybile and Cannon engaged in a verbal dispute over Cannon's right to be present at the law library. During the confrontation, Burkybile allegedly made a racial slur directed at Cannon stating, "You are either a half-breed or of a mixed race and you shouldn't be up here. I hate all you half-breeds and you definitely won't be coming back to the law library this afternoon. I'll personally see to it and make sure you don't get back up in here." Burkybile ordered Cannon not to return and stated he would write him a ticket for unauthorized movement if he returned. Cannon had a discussion with Superintendent Romero over Burkybile's racial epithets and refusal to allow him to use the law library. Romero then escorted Cannon back to the law library and directed Burkybile to allow Cannon to use the library. As Cannon was leaving the law library, Burkybile confronted Cannon and informed Cannon that his feelings toward him had not changed. On July 3, 1997, Cannon filed an institutional grievance concerning his

dispute with Burkybile. The next day, Cannon also filed complaints with the FBI and Illinois Department of Human Rights alleging a hate crime.

Cannon's relationship with Burkybile deteriorated after the initial July 3 encounter. On July 30, 1997, Burkybile conducted a shakedown of Cannon before he entered the law library. Cannon alleges that, at the same time, Burkybile allowed a white inmate to pass without being searched. Burkybile confiscated two books from Cannon during the search. Cannon contends that Burkybile's search was motivated by racial animosity, alleging that Burkybile told him that he was the same half-breed he always hated. Cannon also alleges that Burkybile deliberately delayed his access to the library while he checked the I.D. cards of other inmates and reviewed the contents of Cannon's books. He then refused to return two of Cannon's books on the grounds that they were pornographic. Cannon subsequently engaged in an argument with Burkybile over the content of the books and demanded a shakedown slip. Burkybile eventually returned one of the books and gave Cannon a shakedown slip. He then ordered Cannon to leave the law library and falsely accused Cannon of copying pornographic material.

After this incident, Burkybile wrote Cannon allegedly false disciplinary tickets charging him with intimidation, insolence, and possession of unauthorized property. Cannon

contends that Burkybile wrote these tickets to retaliate against Cannon for filing complaints with supervisory personnel. As a result of the charges, Cannon faced the possibility of losing good time credits and being confined in segregation. On August 6, 1997, the adjustment committee found Cannon not guilty of intimidation and threats, but found him guilty of insolence and possession of unauthorized property. As a result, Cannon was demoted to C-grade status for three months.

Cannon's next confrontation with Burkybile occurred on August 7, 1997 when Burkybile allegedly threatened him for filing grievances. Burkybile allegedly held up a rifle and stated, "You deal with it your way and I'll deal with it mine." Cannon then filed another grievance concerning Burkybile's threats and Cannon's personal fear of Burkybile. Cannon sent copies of the grievance to Gillen, Schomig, and Washington. Burkybile allegedly again harassed Cannon on August 12, 1997, in retaliation for Cannon filing grievances and due to racial animosity. Burkybile conducted a shakedown of Cannon, wrinkling his legal papers during the process. Cannon filed another grievance with Warden Cooper. Cooper then forwarded the grievance to the appropriate parties and sent Cannon a letter indicating he had done so.

On August 26, 1997, Cannon filed a grievance concerning his July 30 ticket for possession of unauthorized property and

requested to send home the book that was confiscated by Burkybile. Defendants Wilson, Harry, and Washington allegedly violated Departmental Rule 501.230 and Cannon's due process rights by refusing to allow him to send the book home.

Cannon's problems with Burkybile continued on November 12, 1997 when Burkybile allegedly threatened Cannon on account of his race and for filing grievances. Cannon was attending an Administrative Review Board meeting when Burkybile confronted him using profanities and racial epithets. On December 13, 1997, Cannon filed a grievance with respect to Burkybile's continued harassment and retaliation. Later in December 1997, Burkybile had another verbal confrontation with Cannon over grievances and Cannon consequently filed another grievance. On April 12, 1998, Wilson recommended that Cannon's ongoing problems with Burkybile and the grievances be referred to internal affairs. The Warden concurred with Wilson's recommendation.

On May 24, 1998, Burkybile and Cannon had another verbal confrontation over grievances. Cannon repeated his practice of filing another grievance. On June 27, 1998, Burkybile allegedly retaliated against Cannon by verbally threatening him and using a racial epithet.

On August 8, 1998, the "Orange Crush" tactical squad was conducting a shakedown of Cannon's gallery 1 prior to

transferring the prisoners to gallery 2. Burkybile and Benematti both participated in the shakedown as members of the "Orange Crush" unit. While the shakedown was in progress, Benematti and Burkybile allegedly repeatedly harassed Cannon for filing grievances against Burkybile. Cannon filed a grievance with Warden Carter over the repeated harassment by Burkybile and Benematti and forwarded copies to internal affairs, the FBI, and the Illinois Department of Human Rights.

On August 10, 1998, Benematti, allegedly in retaliation for Cannon filing grievances, withheld Cannon's mail, disrupted his prayer, and denied a request for toilet paper. Cannon filed a grievance concerning this conduct. Benematti once again interrupted Cannon and his cellmate during their prayer to inquire whether they wanted any razors. Cannon did not immediately respond, but, when he later requested a razor, Benematti refused. Benematti also refused to pick up and deliver Cannon's mail and verbally harassed him. On August 19, 1998, Cannon filed another grievance concerning Benematti's alleged harassment. On August 20, Cannon then sent a letter to Warden Carter detailing the problems he was having with Benematti. On August 26, 1998, Benematti allegedly retaliated by withholding plaintiff's mail.

In addition to suing Burkybile and Benematti for their alleged harassment and retaliation, Cannon also sues the

7

following JCC and IDOC employees for denying his grievances: former IDOC director Washington; IDOC director Snyder; Warden Keith Cooper; Warden Lamark Carter; Administrative Review Chairperson Leora Harry; Grievance Officer Debra Wilson; and Grievance Officer Samantha Franklin. In total, defendants denied 15 grievances filed by plaintiff, including four that he captioned as "emergency grievances."

Cannon divides his complaint into different claims: (I) a claim that defendants retaliated against him for filing grievances in violation of his First and Fourteenth Amendment rights and 20 Illinois Administrative Code 504.810(e); (II) a claim of racial discrimination and retaliation against Officer Burkybile; (III) a claim that defendants penalized him in retaliation for exercising his religion; (IV) a claim that defendants violated his due process[3] and equal protection rights guaranteed by the constitution; (V) a claim of deliberate indifference to his right to file grievances; (VI) a claim of negligence and intentional infliction of emotional distress. Many of Cannon's allegations overlap in his separate claims.

In considering a motion to dismiss, all well-pleaded facts must be accepted as true and all reasonable inferences from those allegations must be drawn in plaintiff's favor; a complaint

---

[3]In his responsive memorandum, Cannon has voluntarily dismissed his due process claims under <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

shall only be dismissed if it is beyond doubt that the plaintiff can prove no facts which would entitle him to relief. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., 62 F.3d 967, 972 (7th Cir. 1995). Furthermore, when confronted with a pro se complaint, the court must employ a more liberal standard of review than would be used where an attorney prepared the complaint. Haines v. Kerner, 404 U.S. 519 (1972); Whitford v. Boglio, 63 F.3d 527, 535 (7th Cir. 1995). Despite this liberal review of pleadings, federal rules still require that the complaint allege facts which would provide an adequate basis for each claim. Gray v. Dane County, 854 F.2d 179, 182 (7th Cir. 1988).

An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977); Matzker v. Herr, 748 F.2d 1143, 1150 (7th Cir. 1984). An inmate's First Amendment right of access to the courts includes the right to pursue administrative remedies that must be exhausted before a claim can be brought in federal court. See Preiser v. Rodriguez, 411 U.S. 475 (1973); DeWalt v. Carter, ___ F.3d ___, 2000 WL 1137385 *9 (7th Cir. Aug. 11, 2000). A prison official may not retaliate against a prisoner because he filed a grievance. See DeWalt, 2000 WL 1137385 at *10; Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996); Black v. Lane, 22 F.3d

1395, 1402-03 (7th Cir. 1994); Higgason v. Farley, 83 F.3d 807, 810 (7th Cir. 1996). This is so even if the prison official's adverse action or conduct does not independently implicate the Constitution. See Babcock, 102 F.3d at 275. For example, if a prison official were to deny an inmate certain privileges, such as visitation, television time, or a prison job because of a retaliatory or discriminatory motive, the conduct would be unconstitutional even though the inmate does not have a property or liberty interest in the privileges. See DeWalt, 2000 WL 1137385 at *4 (termination from prison job); Babcock, 22 F.3d at 274-275 (retaliatory transfer). To state a cause of action for retaliatory treatment, a plaintiff can "allege a chronology of events from which retaliation may be inferred." Black, 22 F.3d at 1399 (quoting Murphy v. Lane, 833 F.2d 106, 108-109 (7th Cir.1987) (holding inmate stated claim for retaliatory transfer where he alleged that he filed four lawsuits against prison officials during July through September, he named the superintendent as a defendant in one lawsuit, and on September 9, he was told of his pending transfer and that the superintendent wanted him to know of his transfer)). However, a conclusory allegation that the defendant was motivated by retaliation will suffice. See Fed. R. Civ. P. 9(b); Bennett v. Schmidt, 153 F.3d at 516, 518 (7th Cir. 1998); Denson v. Metra, 2000 WL 877018 *1

(N.D. Ill. July 3, 2000); Khan v. Cook County, 1996 WL 432410 *3 (N.D. Ill. July 30, 1996).

Cannon alleges that his trouble with Burkybile began on July 3, 1997, when Burkybile impeded Cannon's access to the law library, using derogatory references towards Cannon's mixed race. After Cannon reported to Superintendent Romero on that date and filed a grievance and complaints concerning Burkybile's conduct, a pattern of harassment repeated itself through August 8, 1998, when Burkybile and Benematti participated as members of the "Orange Crush" tactical team, conducting a shakedown of Cannon's gallery. In the interim, Burkybile and Cannon had confrontations on at least seven different occasions regarding the filing of grievances. A recurring pattern of behavior developed in which Burkybile would harass Cannon, Cannon would file an institutional grievance, and the parties would have another confrontation. The cycle of conflict duplicated itself over the span of a year. Most of Burkybile's actions can be characterized as verbal harassment, threats, and the use of racial epithets. While Burkybile's repeated verbal harassment of Cannon does not in and of itself implicate a liberty interest under Patton v. Przybylski, 827 F.2d 697, 700 (7th Cir. 1987), the retaliatory aspect of Burkybile's alleged harassment states a constitutional claim. Furthermore, taking into account Burkybile's other alleged conduct, such as writing false disciplinary tickets,

11

conducting discriminatory shakedowns, and delaying Cannon's access to the law library, Cannon clearly has stated a viable retaliation claim at this stage of the proceeding.

Cannon has also stated a claim of retaliation against Benematti. In Benematti's, case, the chronology of retaliatory events began on August 8, 1998 and lasted approximately one month until August 26. During that period of time, Benematti and Cannon had at least four separate encounters in which Benematti allegedly harassed Cannon for filing grievances against Benematti or his colleague Burkybile. Specifically, Benematti participated in the August 8 shakedown of Cannon, disrupted his prayer services, penalized him for exercising his religious freedom by denying him toilet paper and razors, and temporarily withheld mail. Once again, the alleged actions taken by Benematti do not implicate an independent constitutional right or entitlement. However, the alleged retaliatory aspect of Benematti's conduct, on its face, is unconstitutional. Therefore, Cannon may proceed with his retaliation claim against Benematti. As a point of clarification, Cannon has brought a retaliation claim against Benematti for disrupting his prayers and subsequently penalizing him for exercising his freedom of religion. Cannon's responsive pleading and memorandum explicitly point out that he is bringing a retaliation claim and not a free exercise claim. Finally, any claims initially asserted under the Religious Freedom Restoration

12

Act are now invalidated by the Supreme Court's ruling in <u>City of Boerne v. Flores</u>, 117 S. Ct. 2157, 2172 (1997), holding the act unconstitutional.

Cannon also has brought an equal protection race claim against Burkybile. During their acrimonious encounters, Burkybile repeatedly used racial slurs referring to Cannon's mixed race. Burkybile's use of racially derogatory language is unprofessional, but does not violate the Constitution. <u>See Patton</u>, 827 F.2d at 700. Standing alone, verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws. <u>See id.</u>; <u>Ivey v. Wilson</u>, 832 F.2d 950, 955 (6th Cir. 1987); <u>Williams v. Bramer</u>, 180 F.3d 699, 705-706 (5th Cir. 1999). In order to state an equal protection violation, Cannon must assert that a state actor has treated him differently than persons of a different race and has done so intentionally. <u>See Washington v. Davis</u>, 426 U.S. 229, 239-242 (1976). Cannon's allegations with respect to Burkybile extend beyond mere verbal harassment. First, Cannon alleged that Burkybile impeded his access to the law library on July 3, 1997 on account of his mixed-race. He also alleges that Burkybile conducted various shakedowns and searches of Cannon on account of his race. More specifically, Burkybile detained Cannon for a shakedown on July 30, 1997, while allowing a white inmate to

enter the library without a similar search. At this stage of the proceedings, Cannon has stated a facially valid equal protection claim against Burkybile. Defendants' motion to dismiss with respect to Cannon's equal protection claim will be denied.

In addition to suing Burkybile and Benematti, Cannon has sued a number of IDOC officials for denying his grievances. Specifically, Cannon alleges that the defendants were "deliberately indifferent" to his right to file grievances when they denied 15 of his grievances.

Illinois statutes provide for a prison grievance procedure which entitles inmates to present their complaints to prison officials. See Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982). However, that grievance right is a procedural right and does not confer any substantive rights upon inmates. Id. Therefore, it does not give rise to any protected liberty interest requiring the procedural protection of the Fourteenth Amendment. Id.; see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1995). Furthermore, Cannon's invocation of the judicial process indicates that defendants have not infringed his First Amendment right to petition the government for a redress of grievances. See id.; Cruz v. Beto, 405 U.S. 319, 321 (1972). Therefore, the claim V of Cannon's complaint with respect to the denial of his grievances will be dismissed, which is the only

claim against defendants Keith Cooper, Lamark Carter, Leora Harry, Donald Snyder, Debra Wilson, and Samantha Franklin.

Cannon has also brought a variety of claims under Illinois state law. Claim VI, which Cannon has captioned "negligence and intentional infliction of emotional distress," will be considered first. The Prison Litigation Reform Act ("PLRA") precludes recovery for custodial mental or emotional damages "without a prior showing of physical injury." See 42 U.S.C. § 1997e(e). The Seventh Circuit has previously addressed and upheld constitutional challenges to the PLRA's physical injury requirement. See Zehner v. Trigg, 133 F.3d 459, 460-62 (1997). Cannon's allegations that he suffered headaches, insomnia, stress, and stomach anxiety do not sufficiently meet the physical injury requirement under 42 U.S.C. § 1997e(e). Claim VI will be dismissed.

Cannon has also brought various claims concerning defendants' alleged failure to follow their own administrative regulations. More specifically, Cannon alleges that defendants violated 20 Illinois Administrative Code 504.810(e) and 501.230(c) regarding the return of his confiscated contraband. Defendants Washington, Harry, Wilson, and Cooper allegedly violated IDOC regulations by refusing Cannon's request to send his confiscated book home. Violations of state law or procedures in and of themselves are not cognizable under § 1983. See

Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir. 1988), cert. denied, 476 U.S. 1178 (1989); Azeez v. Fairman, 795 F.2d 1296, 1299 (7th Cir. 1986). Therefore, Cannon's claims that defendants failed to comply with departmental regulations fail to state a federal claim. Finally, with respect to any claim Cannon asserts with respect to the seizure of his book, Cannon has an adequate post-deprivation remedy in the Illinois Court of Claims. See Hudson v. Palmer, 468 U.S. 517, 533-36 (1984), Stewart v. McGinnis, 5 F.3d 1031, 1035-6 (7th Cir. 1993). Therefore, any property claims Cannon asserts with respect to the confiscated book will be dismissed.

Defendants argue they are entitled to qualified immunity. It has been long established that plaintiff is entitled to be exercise his rights to file grievances without fear of retaliation. Furthermore, plaintiff's rights under the equal protection clause have also been firmly established. Therefore, qualified immunity does not apply to the remaining claims. Defendants' counsel are directed to review a recent decision by the Seventh Circuit dealing with asserting the defense of qualified immunity. See Jacobs v. City of Chicago, 215 F.3d 758 (7th Cir. 2000).

IT IS THEREFORE ORDERED that plaintiff's motion for leave to supplement memorandum of law in support of plaintiff's response to motion to dismiss with exhibits [39-1] is granted. Defendants' motion to dismiss [28-1] is granted in part and

denied in part. All claims are dismissed except the First Amendment retaliation claims against defendants Burkybile and Benematti and the equal protection race claim against Burkybile. Defendants Keith Cooper, Lamark Carter, Leora Harry, Odie Washington, Donald Snyder, Debra Wilson, and Samantha Franklin are dismissed from this action. Defendants Burkybile and Benematti shall answer the complaint by October 10, 2000. A status hearing is set for October 19, 2000 at 11:00 a.m.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 21, 2000