# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4623 | **DATE** | MARCH 2/, 2002 |
| **CASE TITLE** | MICHAEL CANNON v. CORRECTIONAL OFFICER BURKYBILE, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment [56] is denied. Plaintiff's motion for summary judgment [59] is granted in part and denied in part. Defendant Ralph Burkybile is held to be liable to plaintiff on plaintiff's racial discrimination equal protection claim. Counsel will be appointed to represent plaintiff. Within 28 days after the appointment of counsel, plaintiff shall serve on defendants a written demand for settlement. Status hearing set for May 29, 2002 at 11:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 22 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | CDY | 61 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3-21-02 | |
| | | | date mailed notice | |
| cw | courtroom deputy's initials | | mqm | |
| | | | mailing initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL CANNON, )
)
Plaintiff, )
)
v. )    No. 99 C 4623
)
CORRECTIONAL OFFICER BURKYBILE )
and SGT. BENEMATTI, )
)
Defendants. )

DOCKETED

MAR 2 2 2002

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Michael Cannon is currently an inmate at
Stateville Correctional Center in Joliet, Illinois. Cannon is of
mixed race--part African-American. Plaintiff complains of
conduct that occurred in 1997 and 1998 when he was incarcerated
at Joliet Correctional Center. Following a ruling on defendants'
motion to dismiss, the only remaining claims are against
Correctional Officer Ralph Burkybile and Correctional Sergeant
Michael Benematti. Plaintiff claims that defendants retaliated
against him for filing grievances. It is also claimed that
Benematti retaliated against plaintiff because he was engaging in
Muslim religious practices and that Burkybile discriminated
against plaintiff because of his race. See Cannon v. Burkybile,
2000 WL 1409852 (N.D. Ill. Sept. 25, 2000) ("Cannon I").
Presently pending are the parties' cross motions for summary
judgment.

61

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d 333, 337-38 (7th Cir. 1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999); Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Shank v. William R. Hague, Inc., 192 F.3d 675, 681 (7th Cir. 1999); Wintz v. Northrop Corp., 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of
> directing the district court to the determinative

issues and the available evidence that pertains
to each.  "[A] party seeking summary judgment
always bears the initial responsibility of
informing the district court of the basis for
its motion, and identifying those portions
of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together
with the affidavits, if any' which it believes
demonstrate the absence of a genuine issue of
material fact."  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986); id. at 325 ("the burden on
the moving party may be discharged by 'showing'--
that is, pointing out to the district court--that
there is an absence of evidence to support the
nonmoving party's case").  Then, with respect to
issues that the non-moving party will bear the
burden of proving at trial, the non-moving party
must come forward with affidavits, depositions,
answers to interrogatories or admissions and
designate specific facts which establish that
there is a genuine issue for trial.  Id. at
324.  The non-moving party cannot rest on the
pleadings alone, but must designate specific
facts in affidavits, depositions, answers to
interrogatories or admissions that establish
that there is a genuine triable issue.  Id.
The non-moving party "must do more than simply
show that there is some metaphysical doubt as
to the material facts."  Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 586
(1986).  "The mere existence of a scintilla of
evidence in support of the [non-moving party's]
position will be insufficient; there must be
evidence on which the jury could reasonably find
for the [non-moving party]."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986).

Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

When a party moves for summary judgment against a pro se
litigant, the pro se litigant must be advised as to summary
judgment procedures.  Timms v. Franks, 953 F.2d 281 (7th Cir.),
cert. denied, 504 U.S. 957 (1992).  The moving party should
provide such notice, but the court should provide the notice if
the moving party fails to provide it.  Id. at 283.  Since

November 2000, this notice requirement has been incorporated in this court's Local Rules, requiring the moving party to provide the notice in a separate document substantially in the form provided in the Local Rule. See N.D. Ill. Loc. R. 56.2. There is no indication that defendants provided this notice to plaintiff. Most of the essential information, however, is contained in defendants' brief and plaintiffs' brief indicates that he understands the basic requirements for summary judgment. Cf. Wheeler v. Illinois Institute of Technology, 1999 WL 965240 *2 n.2 (N.D. Ill. Sept. 30, 1999). Even if plaintiff was not adequately informed about summary judgment procedures, defendants' motion could be ruled upon and if it were granted in whole or in part, any deficiency in providing the notice to plaintiff could be cured by thereafter providing the notice to plaintiff as well as an opportunity to file an additional response. See Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 272 (7th Cir. 1986); Bodunde v. Parizek, 1994 WL 447483 *2 n.1 (N.D. Ill. Aug. 15, 1994), aff'd by unpublished order, 108 F.3d 1379 (7th Cir. 1997); Czajkowski v. City of Chicago, Ill., 810 F. Supp. 1428, 1432-33 (N.D. Ill. 1992). However, since defendants' motion is not otherwise being granted, plaintiff suffered no prejudice from any failure to be fully advised as to summary judgment procedures. In any event, with today's opinion, plaintiff is being sent a copy of Fed. R. Civ. P. 56, N.D. Ill. Loc. R. 56.1, and N.D. Ill. Loc. R. 56.2.

Pursuant to Local Rule 56.1(a)(3), the moving party is to file a statement of facts consisting of short, numbered paragraphs with specific citations to the supporting materials. Local Rule 56.1(b) provides that the nonmoving party is to respond to each paragraph, with citations supporting any dispute, and that the nonmoving party may file a statement of additional facts that preclude summary judgment. If the nonmovant fails to adequately dispute a fact in the Rule 56.1(a)(3) statement or if the movant fails to adequately dispute a fact in the nonmovant's statement of additional facts, such facts are deemed admitted for purposes of summary judgment. Here, in a misreading of Local Rule 56.1(a), defendants provided statements labeled as Local Rule 56.1(a)(1), 56.1(a)(3)(A), and 56.1(a)(3)(B) filings.[1] The first lists the attached exhibits, the second describes the parties (but without record citations), and the third asserts jurisdiction and venue (without record citations supporting the facts) and then goes on to state facts regarding the claims (with record citations). Not having been specifically advised to respond paragraph by paragraph, plaintiff responded by providing a similar format and tracking some of defendants' paragraphs.

The facts recited in the 56.1(a)(3)(B) section of defendants' statement go only to the issue of the effects of

---

[1]Rule 56.1(a)(3) provides for the filing of a single statement of fact that is to be supported by citations to the record and that is to contain the facts entitling the movant to summary judgment, also including "(A) a description of the parties, and (B) all facts supporting venue and jurisdiction in the court." The latter are to be included in a single statement and are to be supported with record citations.

defendants' conduct. Defendants concede, at least for purposes of their own summary judgment motion, that plaintiff was denied access to the law library and denied mail, toilet paper, and razor blades, but qualify these statements by claiming access to the library and items was only delayed, not completely denied. Defendants also assert that, as to the July 30, 1997 incident with Burkybile, the shakedown was in accordance with regulations, contraband was found, and the ticket issued was upheld in part. Defendants also assert that no physical injury was caused by defendants and that plaintiff suffered no "damage" due to defendants' conduct, only "harassment." The 56.1(a)(3)(B) section contains no assertion that defendants were not motivated by retaliation or discrimination.[2]

While not responding paragraph-by-paragraph to each paragraph of defendants' Rule 56.1 filings, plaintiff's Rule 56.1 filings address all the facts contained in defendants' Rule 56.1(a)(3)(B) section. In addition to addressing the effects of defendants' conduct, plaintiff points to evidence that he contends supports that defendants were motivated by discrimination and retaliation.

---

[2]In the section labeled 56.1(a)(3)(A), defendants recite the two defendants' positions at the times pertinent to the suit, attempt to describe the claims against each defendant, and recite that Burkybile denies he discriminated or retaliated against plaintiff and that Benematti denies he violated plaintiff's constitutional rights. None of these statements are supported by record citations and no affidavit or deposition testimony of either defendant is provided, neither in support of the initial motion nor with the reply/response to plaintiff's summary judgment brief.

Although defendants' opening brief makes passing reference to proof of a retaliatory motive being an element of a retaliation claim, it is not contended that plaintiff cannot satisfy that burden and there are no factual assertions to that effect in defendants' Rule 56.1 statement. Instead, defendants argue that (1) the conduct toward plaintiff did not reach a sufficient level of harm to support a cognizable claim; (2) plaintiff's retaliation claims must fail because the same action would have been taken even if there had been no retaliatory motivation; and (3) racial epithets do not, by themselves, constitute racial discrimination.

Since defendants do not assert in their Rule 56.1 statement that they were not motivated by retaliation or discrimination, nor do they file any response disputing plaintiff's Rule 56.1 statement to that effect, for both sides' summary judgment motions it must be deemed to be true that Burkybile was motivated by retaliation and racial discrimination and Benematti was motivated by retaliation for filing the grievances and engaging in religious practices. Even if the facts were not deemed admitted, plaintiff presents evidence showing such motivation and thus indicating that any contrary statements by defendants would, at most, present a genuine dispute precluding summary judgment.

Plaintiff's deposition testimony and affidavits of other inmates support the following facts. Every time plaintiff encountered Burkybile, Burkybile engaged in some form of

harassment. On a number of occasions Burkybile's harassment was accompanied by racially derogatory comments and specific references to the grievances filed by plaintiff, including threats directly connected to the grievances. Such comments are strong evidence of a racial or retaliatory animus. See DeWalt v. Carter, 224 F.3d 607, 612 n.3, 619 (7th Cir. 2000); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999). On one occasion, Burkybile searched plaintiff's bag even though the White inmate ahead of plaintiff had a bag and was not searched. Treating the plaintiff less favorably than a similarly situated person of another race is also evidence of a racial animus. Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1035 (7th Cir. 1998); Pickett v. Ingalls Memorial Hospital, 2001 WL 1155276 *9 (N.D. Ill. Sept. 28, 2001). Also, on a number of occasions, Burkybile denied plaintiff access to the law library even though plaintiff was on the approved list. This occurred after plaintiff had filed grievances and there is no evidence (or even a proffered explanation) of any nondiscriminatory reason to deny such access. A retaliatory motive can also be inferred from such evidence. See Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000).

The evidence also supports that Benematti harassed plaintiff and a cellmate while the two were engaged in prayer and made derogatory comments about their religious garb. On one occasion Benematti teased them by offering toilet paper to interrupt a prayer session and another time razors. On both

occasions, Benematti then refused to provide the items after the
prayer sessions were completed while making comments about the
praying. On at least one occasion, Benematti accompanied
harassment with a reference to the grievances filed against
Burkybile. When plaintiff asked why Benematti was disrespecting
him and his religion, Benematti responded that he was doing it
for the same reasons that plaintiff was "fucking with and
disrespecting Burkybile--fuck your prayers!" Pl. Exh. G1 at 3.

On the other hand, defendants provide no affidavit or
testimony of their own either disputing specific events or
denying the unlawful motivation. Plaintiff's evidence of
retaliation and discrimination stands unrefuted. On the evidence
before the court on summary judgment, a reasonable trier of fact
could only find that defendants were motivated by retaliation and
racial discrimination as is alleged.

The appropriateness of summary judgment, therefore, will
turn on the nature of the harassment and whether it will support
a claim. The only evidence provided is plaintiff's testimony,
the affidavits of other inmates that are generally consistent
with plaintiff's testimony, and the grievance records. There are
generally no genuine material factual disputes, so the facts are
largely the same for both summary judgment motions.

On a number of occasions in July and August 1998,
Burkybile denied plaintiff access to the law library, most times
plaintiff was still able to gain access later in the day either
because Burkybile was gone or a superior overruled Burkybile. On

one occasion, when plaintiff could not get in until the afternoon, plaintiff was unable to complete the research he had intended.  There is no evidence, however, that he was unable to complete that particular research on a following day or that it prejudiced him in the case he was researching.  On another occasion, plaintiff was unable to gain access on that particular day, but there is no evidence that he was unable to do the research on another day or that it prejudiced him in his case.

On July 30, 1997, Burkybile searched plaintiff's bag even though the White inmate in front of plaintiff also had a bag and was not searched.  Burkybile found contraband in plaintiff's bag, a book about oral sex that included photographs.  Burkybile wrote a disciplinary ticket against plaintiff.  The charges of unauthorized property and insolence were upheld.  The charge of threats and intimidation was not upheld.

On a number of occasions, Burkybile threatened plaintiff, including by pointing a rifle at him.  One time when Burkybile was in riot gear in plaintiff's unit, he particularly picked plaintiff out for a search.  Benematti was also present on that occasion.  There is no evidence that Burkybile or Benematti ever caused plaintiff direct physical harm.

On a number of occasions, Benematti withheld plaintiffs' mail until the end of Benematti's shift.  There is no evidence that he destroyed any mail.  At most, he delayed delivery of plaintiff's mail for up to the eight-hour length of a shift.

On a number of occasions Benematti denied plaintiff
toilet paper.  Plaintiff would generally be able to get toilet
paper from the next shift and never had to wait longer than the
next day.  On one occasion, he had to wipe himself with his
t-shirt because there was no toilet paper.

On a number of occasions, Benematti denied plaintiff a
razor for shaving.  On some of those occasions, plaintiff had to
wait three or four days for a razor.

Plaintiff testified that the treatment by Burkybile
caused him to have emotional distress resulting in sleeplessness
and stomachaches.  Medical technicians provided him with antacids
and he met with a psychiatrist.  On defendant Burkybile's summary
judgment motion, it would be taken as true that these symptoms
were caused by Burkybile's harassment.  However, a reasonable
trier of fact could also find this testimony to be noncredible.
For purposes of plaintiff's summary judgment motion, it would not
be assumed to be true that plaintiff suffered physical symptoms
as a result of Burkybile's retaliation.  However, which version
is true is not a material fact because plaintiff is precluded
from obtaining damages for such injuries because there were no
physical injuries.  42 U.S.C. § 1997e(e); Cannon I, 2000 WL
1409852 at *6; Shaheed-Muhammad v. Dipaolo, 138 F. Supp. 2d 99,
110 n.31 (D. Mass. 2001); Cain v. Commonwealth of Va., 982
F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997).

As defendants concede, it is well established that the
Constitution prohibits retaliating against a prisoner for

- 11 -

exercising First Amendment rights such as filing grievances about
treatment or practicing a religion.  Cruz v. Beto, 405 U.S. 319
(1972); DeWalt, 224 F.3d at 618; Cain v. Lane, 857 F.2d 1139,
1143 (7th Cir. 1988); Howland v. Kilquist, 833 F.2d 639, 644 (7th
Cir. 1987) (quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.
1978), cert. denied, 440 U.S. 916 (1979)).  It is also well
established that the Constitution prohibits discrimination
against a prisoner because of his race.  See DeWalt, 224 F.3d at
613, 618.

     Relying on Eighth Amendment and First Amendment access to
court precedents, defendants contend plaintiff has not shown a
cognizable injury because he has not shown either direct physical
injury or extreme psychological injury nor has he shown that the
limits on his access to the law library prejudiced him in any
litigation.  Plaintiff, however, is not bringing either an Eighth
Amendment claim or an access to court claim.  He is bringing
claims of retaliation and discrimination.  Such claims have a
different standard as to the required injury.

     For a First Amendment retaliation claim, there is no
requirement that the adverse action or conduct independently
constitute a violation of the Constitution.  Babcock v. White,
102 F.3d 267, 275 (7th Cir. 1996); Cannon I, 2000 WL 1409852 at
*4.  A retaliation claim for interference with First Amendment
rights is actionable no matter how trivial the injury as long as
the adverse consequence was "an effective deterrent to the
exercise of a fragile liberty."  Power v. Summers, 226 F.3d 815,

820 (7th Cir. 2000).  The Seventh Circuit cases have generally involved retaliation against employees, but the Seventh Circuit has stated that this rule would apply in any context, see id., and the stated justification for the rule would not be limited to employment situations, see Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).  Other circuits have applied this rule to retaliation claims by inmates.  See, e.g., Dawes v. Walker, 239 F.3d 489, 492-93 (2d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); Thaddeus-X v. Blatter, 175 F.3d 378, 396-98 (6th Cir. 1999); Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) ("Crawford-El I"), rev'd on other grounds, 523 U.S. 574 (1998) ("Crawford-El II").  See also Buck v. Briley, 2001 WL 619523 *5 (N.D. Ill. May 23, 2001).

The Seventh Circuit has stated that First Amendment retaliation can be "something as trivial as making fun of an employee for bringing a birthday cake to the office to celebrate another employee's birthday," Power, 226 F.3d at 820 (citing Bart, 677 F.2d at 624),[3] or "a campaign of petty harassment," "minor forms of retaliation," "diminished responsibilities, or false accusations."  Power, 226 F.3d at 821 (quoting DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995)).

> The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.

---

[3]See also Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 n.8 (1990) (dictum).

> Yet even in the field of constitutional torts <u>de minimis non curat lex</u>. Section 1983 is a tort statute. A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . .

<u>Bart</u>, 677 F.2d at 625. The form of retaliation must be sufficiently adverse so as to deter the exercise of the First Amendment rights at issue. <u>Power</u>, 226 F.3d at 821. It "must be sufficiently adverse to present an actual or potential danger that the speech of [the plaintiffs] will be chilled." <u>DeGuiseppe</u>, 68 F.3d at 191. Stated another way, the injury inflicted must be "likely to chill a person of ordinary firmness from continuing to engage in that activity." <u>Bloch v. Ribar</u>, 156 F.3d 673, 678 (6th Cir. 1998). <u>See also</u> <u>Dawes</u>, 239 F.3d at 493; <u>The Chicago Reader v. Sheahan</u>, 141 F. Supp. 2d 1142, 1144-45 (N.D. Ill. 2001).

Here, plaintiff apparently was not deterred by defendants' conduct. He continued to file grievances, including the present lawsuit which was filed while he was still incarcerated at Joliet. Plaintiff, though, may be a grievant and litigant of more than ordinary firmness. In any event, the injury standard is objective and a claim may be pursued even if the plaintiff himself has not actually been deterred from speaking. <u>See</u> <u>DeGuiseppe</u>, 68 F.3d at 191 ("actual or potential danger"), 192 ("it need merely create the potential for chilling employee speech"); <u>Dawes</u>, 239 F.3d at 493; <u>Thaddeus-X</u>, 175 F.3d

at 398; DeLeon v. Little, 1999 WL 1490299 *5 (D. Conn. Sept. 29, 1999). "This objective inquiry is 'not static across contexts,' but must be 'tailored to the different circumstances in which retaliation claims arise.'" Dawes, 239 F.3d at 493 (quoting Thaddeus-X, 175 F.3d at 398). Also, although an objective standard, it is a question of fact as to whether an inmate of ordinary firmness would be deterred from speaking out. Bart, 677 F.2d at 625; Suppan v. Dadonna, 203 F.3d 228, 234 (3d Cir. 2000); Thaddeus-X, 175 F.3d at 398; Bloch, 156 F.3d at 679.

In the present context, it may be considered that "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." Thaddeus-X, 175 F.3d at 398. Accord Dawes, 239 F.3d at 493. However, it must also be considered that amenities or privileges that may be considered minor or trivial to an average citizen may be viewed as major and of great importance to an inmate. See Block v. Rutherford, 468 U.S. 576, 606 (1984) (Marshall, J., dissenting) ("The possessions that a man is allowed to keep in his cell are meager indeed, being limited to things like a few pictures, magazines, cigarettes, candy bars, and perhaps an extra pair of socks. Nonetheless, these items are cherished by the inmates."); Wilson v. Beame, 380 F. Supp. 1232, 1235 (E.D.N.Y. 1974) (quoting Palmigiano v. Baxter, 487 F.2d 1280, 1284 (1st Cir. 1973), vacated, 418 U.S. 908 (1974)) ("In a prison setting where liberty is by necessity shrunken to a small

set of minor amenities . . . it is likely that any marked change
of status which forecloses such liberties will be perceived and
felt as a grievous loss."); Daigle v. Helgemoe, 399 F. Supp. 416,
418 (D.N.H. 1975) (same); United States ex rel. Myers v. Sielaff,
381 F. Supp. 840, 843 (E.D. Pa. 1974) (same). Thus, threats to
such amenities or privileges are more likely to have an effect on
the average inmate's behavior than on the behavior of an ordinary
citizen. Also, an inmate, whose life is more controlled than
that of an ordinary citizen, may feel he or she is powerless in
the face of threats from a correctional employee.

In Thaddeus-X, the question was whether an inmate of
ordinary firmness would be deterred from exercising the right to
access to the courts. The court held:

> We need not pause for long in the case of
> plaintiff X: his allegations, if true, certainly
> meet the standard. Harassment, physical threats,
> and transfer to the area of the prison used to
> house mentally disturbed inmates, especially
> combined with the conditions allegedly present
> there, would likely have a strong deterrent
> effect. With respect to plaintiff Bell, the
> question is whether there is a genuine issue of
> material fact regarding the deterrent effect of
> the claimed deliberate harassment and cold meals
> that would continue unless and until he dropped
> his lawsuit against the warden. . . . Since we
> believe that the district court applied an
> inappropriate test in granting summary judgment
> on this issue, we remand for a determination by
> the district court in the first instance under
> the standard we have articulated today.

Thaddeus-X, 175 F.3d at 398-99.

In Allah, the plaintiff alleged he was retaliated against
by being placed in administrative segregation, which "resulted,

inter alia, in reduced access to phone calls, reduced access to
the commissary, reduced access to recreation, confinement in his
cell for all but five hours per week, denial of access to
rehabilitative programs and, significantly, inadequate access to
legal research materials and assistance." Allah, 229 F.3d at
225. On the defendants' motion to dismiss, it was held that a
"fact finder could conclude from those facts that retaliatory
continued placement in administrative confinement would 'deter a
person of ordinary firmness from exercising his First Amendment
rights.'"

        In Crawford-El, the plaintiff claimed the correctional
official retaliated against him by misdelivering boxes containing
legal papers, clothing, and other personal items. See
Crawford-El I, 93 F.3d at 815. He claimed that he suffered
injury in the form of the costs to replace underwear, shoes, and
other items; shipping charges to get the papers back; and mental
and emotional distress. Id. at 826. The District of Columbia
Circuit held "that the pecuniary losses Crawford-El sustained in
the form of the costs of shipping his boxes and replacing
clothing, though small, might well deter a person of ordinary
firmness in Crawford-El's position from speaking again." Id.

        In Dawes, the defendant had called the plaintiff an
informant in front of other inmates, which the plaintiff
contended placed him at risk of attacks from other inmates. The
court held this did not represent a likely chill on speech
because there was no evidence supporting that such comments were

likely to incite other inmates. "[W]e are unwilling simply to assume that prison inmates would be incited, without more, to attack 'one of their own' who was labeled as an 'informant' and a 'rat' for complaining to prison supervisors about a prison guard's conduct." Dawes, 239 F.3d at 493.

In Buck, a one-time, six-hour shutoff of the water for the inmate's cell was held to be an insufficient adversity to support a retaliation claim. Buck, 2001 WL 619523 at *5.

Here, the facts are that Burkybile repeatedly threatened plaintiff, repeatedly delayed or denied access to the law library, and filed one unfounded charge against him. As for Benematti, he interrupted plaintiff's prayers, denied him toilet paper for less than 24 hours (though once long enough that plaintiff had to use his shirt instead), and denied access to a razor for days at a time. Though not conclusive, it may also be considered that plaintiff was not actually deterred from filing grievances. On these facts, it could be found that both Burkybile and Benematti engaged in retaliatory conduct that would have a sufficiently likely effect of deterring an inmate from filing further grievances. However, it would not be unreasonable for a trier of fact to also find otherwise. On this issue, a genuine factual dispute remains that must be resolved by the trier of fact. Therefore, plaintiff cannot be entitled to summary judgment on his retaliation claims. Defendants are not entitled to summary judgment on this ground, but they also raise another ground as to the retaliation claim.

Defendants' other contention as to retaliation is that
their retaliation cannot be considered the cause of any of the
adverse consequences because the same consequences would have
occurred regardless of the retaliation. See Crawford-El II, 523
U.S. at 593; Babcock, 102 F.3d at 275; Thaddeus-X, 175 F.3d
at 399. See also Texas v. Lesage, 528 U.S. 18 (1999) (equal
protection claim); Petit v. City of Chicago, 2001 WL 629306 *5-6
(N.D. Ill. May 25, 2001) (same). Defendants' basis for this
contention is that, as to the July 30, 1997 law library incident,
Burkybile found contraband and two of the charges against
plaintiff were upheld. This contention, however, only goes to
one time that plaintiff was denied access to the library. It
does not go to all the other adverse consequences suffered by
plaintiff, nor the one charge that (on the present record) must
be considered to be intentionally unfounded. Moreover, finding
contraband in plaintiff's bag is not a basis for inferring that
the search would have occurred regardless of Burkybile's
retaliatory and discriminatory motives. The evidence is to the
contrary, Burkybile did not search the similarly situated, White
inmate that preceded plaintiff. In any event, plaintiff does not
contend the seizure of the contraband book or the discipline
resulting from the upheld charges are adverse consequences of
Burkybile's retaliation and discrimination. Other adverse
consequences were found to be sufficient to support plaintiff's
claim. At best, a factual dispute exists as to whether defendant

Burkybile[4] was the cause of one time being denied access to the
law library.  That is no basis for granting summary judgment on
the claims against Burkybile or Benematti.

Still to be considered is the discrimination claim
against Burkybile.  Plaintiff's claimed discrimination is not the
racial epithets; those are evidence of the discriminatory
conduct.  The alleged discrimination is in being denied access to
the law library, being threatened, and having an unfounded charge
brought against plaintiff.

At least one court has held that there is no de minimis
exception for equal protection violations.  Monterey Mechanical
Co. v. Wilson, 125 F.3d 702, 712 (9th Cir. 1997).  The Seventh
Circuit has held that, for judicially-created Bivens actions,
there is no damages remedy for de minimis equal protection
injuries such as a racially motivated, local transfer of military
personnel with no suggestion of significant actual harm.
Jones v. Reagan, 696 F.2d 551, 555 (7th Cir. 1983).  The present
case, however, is for a statutorily created remedy under 42
U.S.C. § 1983.  To the extent § 1983 contains a de minimis injury
requirement, it is a very low threshold.  See Billings v. Madison
Metropolitan School District, 259 F.3d 807, 814 (7th Cir. 2001)
(claim of race conscious seating of elementary school students
for short duration, even if it had minimal effect, could not be
dismissed as de minimis).  Also, even if the injury plaintiff

_____

[4]The denials of admission to the library are not alleged
against Benematti.

suffered did not support monetary compensation, he would still be entitled to nominal damages for the intentional discrimination. Carey v. Piphus, 435 U.S. 247, 266-67 (1978); Irish Lesbian & Gay Organization v. Giuliani, 143 F.3d 638, 651 (3d Cir. 1998); Petit v. City of Chicago, 31 F. Supp. 2d 604, 612 (N.D. Ill. 1998), reconsideration granted in part on other grounds, 2001 WL 629306 *5-6 (N.D. Ill. May 25, 2001); Baltzer v. City of Sun Prairie, 1990 WL 600074 *2 (W.D. Wis. March 6, 1990). Here, plaintiff was denied access to the law library on particular occasions, had an unfounded charge made against him, and was threatened. Those are not de minimis racially discriminatory equal protection injuries.

Plaintiff has presented undisputed evidence that he has been discriminated against because of his race and that he suffered injury as a result. Summary judgment for liability will be granted as to the race discrimination claim against Burkybile. The issue of damages on that claim remains to be resolved.

Counsel will be appointed to represent plaintiff. Within 28 days, counsel shall consult with his client and thereafter serve a written demand for settlement upon defendants. At the next status hearing, the parties shall report on the possibility of settlement. If settlement appears unlikely, a date will be set for the filing of the final pretrial order.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [56] is denied. Plaintiff's motion for summary judgment [59] is granted in part and denied in part. Defendant

Ralph Burkybile is held to be liable to plaintiff on plaintiff's racial discrimination equal protection claim. Counsel will be appointed to represent plaintiff. Within 28 days after the appointment of counsel, plaintiff shall serve on defendants a written demand for settlement. Status hearing set for May 29, 2002 at 11:00 a.m.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED: MARCH 21 , 2002